Middlesex & Boston St. Railway Co. *v.* Board of Aldermen of Newton.

MIDDLESEX & BOSTON STREET RAILWAY COMPANY
& another[1] *vs.* BOARD OF ALDERMEN
OF NEWTON & others.[2]

Middlesex.    March 2, 1976. — February 10, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Zoning,* Special permit, Board of aldermen: decision. *Damages,* Public officer, Public board.

Despite the fact that no other owner of a completed apartment building in a city had been required by a board authorized to grant special permits to dispose of the solid waste from the building at his own expense, the imposition of such a condition in granting the plaintiff a special permit to erect an apartment did not violate the equal protection clause where the condition represented the institution of a new policy by the board, nor did it exceed the board's power under G. L. c. 40A, § 4. [851-853]

A board of aldermen, acting as the body authorized to grant special permits under a city's zoning ordinance, did not have the authority under either the city's zoning ordinance or G. L. c. 40A, the zoning enabling statute, to condition the grant of a special permit for the erection of multiple dwelling units in a single residence district on the applicant's agreement to lease a specified number of units to the city's housing authority at prescribed rentals so as to enable the authority to lease the units to elderly or low income tenants under a subsidized rent program. [853-859]

In an appeal from a decision by a board of aldermen, acting as a special permit authority under a city's zoning ordinance, the defenses of waiver or estoppel were not open to the board where it failed to plead such a defense and where it implicitly acknowledged and sanctioned the plaintiff's action in proceeding with construction of

[1] The company named in the title of this case is the former owner of the parcel of land involved in this proceeding, and the other plaintiff is Michael F. Iodice, the present owner of the parcel. They are referred to collectively as "the plaintiff." At a later date another plaintiff, C. B. Westgate and Son, Inc., was added but it does not now appear to be involved in the remaining issues presented by this appeal.

[2] The original defendants are the members of the board of aldermen of the city of Newton. At a later date the city of Newton was added as a defendant. Also at a later date the plaintiff filed a motion to add the building commissioner of the city of Newton as a defendant, but it does not appear from the record whether that motion was ever allowed.

850                                    371 Mass. 849

Middlesex & Boston St. Railway Co. *v.* Board of Aldermen of Newton.

its apartment building while simultaneously appealing certain conditions imposed on its special permit. [859-860]

In an appeal from a decision by a board of aldermen, acting in its capacity as a special permit authority under a city's zoning ordinance, the fact that the board imposed an invalid condition on the permit did not entitle the plaintiff to recover damages from the board. [860-861]

BILL IN EQUITY filed in the Superior Court on October 9, 1973.

The suit was heard by *Connolly*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*John M. Mullen* for the plaintiffs.

*Jason A. Rosenberg*, Assistant City Solicitor, for the defendants.

QUIRICO, J.    On September 4, 1973, the defendant board of aldermen (the board), acting in its capacity as the special permit authority under the Newton zoning ordinance, granted a special permit to the plaintiff to erect fifty-four dwelling units in a garden apartment development on Commonwealth Avenue in that city. The board attached numerous conditions to the permit, but only two of them concern us in this case and they are reproduced in full in the margin of this opinion.[3] One of these two condi-

---

[3] "7. That the proposed dumpsters, to be located in accordance with the site plans identified in Condition #1 above, shall be side loading with spring loaded doors and of a capacity satisfactory to the Director of Public Works. Said dumpsters and dumpster areas shall be maintained at all times in a clean and sanitary manner. All solid waste shall be removed from the site at the owners expense by a private rubbish collector.

"8. That no apartment or building shall be occupied until the petitioner shall have reserved five (5) apartment units, consisting of three (3) two-bedroom units for low income families and two (2) one-bedroom units for low income elderly, on the petitioned site for the subsidized lease program of the Newton Housing Authority. Said reserved units are to be identical in every respect to other apartments, containing the same number of bedrooms, within the building. The reserved apartments shall be reserved for five years with two five-year options for renewal. An executed agreement between the petitioner and the Newton Housing Authority shall be filed with the Newton City Clerk and the Registry of Deeds in Middlesex County prior to occupancy of any apartment."

371 Mass. 849                                           851

Middlesex & Boston St. Railway Co. *v.* Board of Aldermen of Newton.

tions, condition No. 7, requires by the last sentence thereof that "[a]ll solid waste shall be removed from the site at the owners expense by a private rubbish collector." The other, condition No. 8, requires the plaintiff to lease five of the fifty-four units to the Newton Housing Authority (the NHA) for use by the latter in connection with its federally subsidized leased housing program. This condition requires the plaintiff to lease to the NHA three two-bedroom units for low income families at $202 a month for each unit, and two one-bedroom units for low income elderly persons at $180 a month for each unit. Comparable units in the same development are rented by the plaintiff to tenants at $475 a month for two-bedroom units and $425 a month for one-bedroom units.

The plaintiff appealed to the Superior Court under G. L. c. 40A, § 21,[4] alleging that the board had exceeded its authority in imposing the condition contained in the last sentence of condition No. 7 and in imposing condition No. 8, and asking that those conditions be annulled. After a hearing on the merits a judge of the Superior Court made detailed findings of fact and rulings of law concluding that conditions No. 7 and No. 8 were valid and he ordered the entry of judgment dismissing the appeal. Such a judgment was entered, the plaintiff appealed therefrom to the Appeals Court, and we granted the plaintiff's request for direct appellate review. G. L. c. 211A, § 10 (A).

We hold (a) that the plaintiff has failed to sustain his burden of proof that the board exceeded its authority in imposing condition No. 7 and (b) that the board exceeded its authority in imposing condition No. 8.

1. *Condition No. 7.* The plaintiff's principal argument on condition No. 7 is that no other owner of a completed apartment building in Newton has been required to dis-

---

[4] All the proceedings before the board and the Superior Court took place before the enactment of St. 1975, c. 808, entitled "An Act further regulating the zoning enabling act." Unless otherwise stated, all references in this opinion to any section of G. L. c. 40A shall be to the section as it appeared prior to any change made thereto by St. 1975, c. 808, § 3.

Middlesex & Boston St. Railway Co. *v.* Board of Aldermen of Newton.

pose of the solid waste from the building at his own expense, and that therefore to require him to do so is invidiously discriminatory, that it is arbitrary, capricious, and a denial of the equal protection of the law and a taking of his property without compensation, all in violation of various provisions of the Constitutions of Massachusetts and the United States. The claim is impressive in the abstract, but the record is lacking in facts adequate to support it.

Although the judge's opinion is spread over twenty-three typewritten pages and indicates that he gave the case careful attention, most of which was directed to condition No. 8, his only reference to condition No. 7 was the following language: "Condition seven is clearly related to the purposes of zoning namely 'to facilitate the adequate provision of public requirements' (c. 40A, § 3) and is therefore a valid condition. Plaintiffs allege that the imposition of this condition on them alone amounts to a denial of equal protection. Evidence at trial indicated that the board is not singling out plaintiffs and imposing this condition on them alone. Rather, the board is instituting a new policy and plaintiffs are among the first to come within the new policy. Since the action of the board is not irrational or arbitrary in this case and is validly related to a legitimate purpose, it would not be found to violate the equal protection clause." This was followed by citing the case of *Railway Express Agency, Inc.* v. *New York*, 336 U.S. 106 (1949), in which the Court said, at 110: "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all."

The plaintiff contends that he has been singled out for treatment different from and more burdensome than other apartment owners. The judge found only that he was among the first to be affected by a new policy for dealing with waste removal from apartment buildings or developments. The facts as found by the judge fall short of supporting either the plaintiff's principal claim that condition No. 7 violated his constitutional rights or his additional

371 Mass. 849                                        853

Middlesex & Boston St. Railway Co. *v.* Board of Aldermen of Newton.

claim that it was null and void because it exceeded the board's power under G. L. c. 40A, § 4, to impose "appropriate conditions and safeguards" in granting special permits.

2. *Condition No. 8.* At all times material to this case the land in question (the locus) was classified as in a residence D district under the zoning ordinance of the city of Newton. The ordinance provided in § 24-6 (c) that "[i]n residence D districts the board of aldermen may give permission ... for the construction of garden apartments" subject to certain stated requirements, all of which have been met. The ordinance further provided in § 24-29 as follows: "(a) When in its judgment the public convenience and welfare will be substantially served, the board of aldermen may, on petition, and subject to such appropriate conditions and safeguards as it may impose ... allow exceptions to the application of the district regulations established in this chapter in harmony with their general intent and purpose, to: ... (3) Permit certain uses of buildings or land in private residence and residence D, E and F districts (section 24-6 (b), (c) and (d)).... (b) ... The board of aldermen may attach such conditions and limitations of time to a permission granted under this section as may be necessary to protect the neighborhood in which lies the property to which the permission relates.... Any person making application to the board of aldermen under this section shall pay to the city clerk at the time of filing such application the fee [of $25] prescribed by section 11-3."

The zoning ordinance of Newton in its entirety, and particularly those portions thereof which are quoted immediately above, show that the city of Newton has exercised the option given to cities by the zoning enabling statute (G. L. c. 40A, § 4) to provide by its ordinance that the board of aldermen be designated as the appropriate local administrative board having power to grant zoning "exceptions" or "special permits." The language of the ordinance clearly tracks that of the statute which we have

854                                                      371 Mass. 849

Middlesex & Boston St. Railway Co. *v.* Board of Aldermen of Newton.

reproduced in the margin of this opinion.[5] The only other pertinent statute bearing directly on the power of the local administrative board in the matter of special permits is G. L. c. 40A, § 15, inserted by St. 1954, c. 368, § 2, which provides in part: "A board of appeals shall have the following powers: ... 2. To hear and decide applications for special permits for exceptions as provided in section four upon which·such board is required to pass."

It follows from what we have said above that in the city of Newton the members of the board of aldermen have been designated by ordinance to serve as the legal equivalent of the zoning board of appeals in other municipalities with respect to the issuance of special permits. In discharging the duties imposed on them by the zoning ordinance with respect to special permits those persons are acting as members of a local administrative board, and not as members of the municipal legislative body. Any reference to the "board" from this point on in this opinion will be to

---

[5] General Laws c. 40A, § 4, as amended through St. 1966, c. 199, provides: "A zoning ordinance or by-law may provide that exceptions may be allowed to the regulations and restrictions contained therein, which shall be applicable to all of the districts of a particular class and of a character set forth in such ordinance or by-law. Such exceptions shall be in harmony with the general purpose and intent of the ordinance or by-law and may be subject to general or specific rules therein contained. The board of appeals established under section fourteen of such city or town, or the city council of such city or the selectmen of such town, as such ordinance or by-law may provide, may, in appropriate cases and subject to appropriate conditions and safeguards, grant to an applicant a special permit to make use of his land or to erect and maintain buildings or other structures thereon in accordance with such an exception. Before granting such a special permit the board of appeals, or the city council or the selectmen, whichever the ordinance or by-law provides, shall hold a public hearing thereon, notice of which shall be given in accordance with section seventeen. If the city council or the selectmen are designated to act upon such a special permit they shall be subject to the requirements of sections eighteen, nineteen, twenty and twenty-one in the same manner as the board of appeals. Notwithstanding the provisions of the two preceding sentences, if a city council having more than five members is designated to act upon such a special permit, the public hearing may be held by a committee of such council designated or appointed for the purpose by the council, and the vote required to grant such special permit shall be a two thirds vote of all of the members of such council."

Middlesex & Boston St. Railway Co. *v.* Board of Aldermen of Newton.

the administrative board acting pursuant to the provisions of G. L. c. 40A, and the Newton zoning ordinance, with the same power and authority which would have been possessed by a zoning board of appeals with reference to special permits if the ordinance had not designated the members of the board of aldermen to act as such a board for such permits.

It is undisputed that the board had the power to grant the special permit in question to the plaintiff. The only question is whether the board had the power to impose condition No. 8 on the plaintiff as a part of that special permit. We hold that it did not.

At this point we take note of the board's practice and apparent motive in imposing this type of condition on applicants for special permits to construct multiple housing units. Before imposing the condition at issue on the plaintiff, it had imposed substantially similar conditions in three instances when granting special permits in 1968, 1969, and 1973. In each of those instances the board required the applicant to lease about ten per cent of the proposed units to the NHA for the latter's use in providing subsidized leased housing for elderly persons or persons of low income. In 1976, in issuing a special permit for 428 units of multiple housing it required the applicant to pay the NHA the sum of $125,000 for its use in the provision of low income family housing, and that the applicant lease to the NHA twelve of the new units for its subsidized lease program for low income elderly occupancy.[6]

Before considering the several grounds on which the board seeks to justify its imposition of condition No. 8, we note that the outer limits of the powers of the board with respect to special permits are those prescribed by

---

[6] The 1976 special permit imposing such a condition was issued after this case was argued before this court, and it was brought to our attention by the plaintiff's counsel who sent a copy of his letter to the defendants' counsel. Defendants' counsel objected to the appropriateness of the letter by plaintiff's counsel, but did not question the fact that a special permit was issued by the board in 1976 with the conditions described.

G. L. c. 40A, §§ 4 and 15, by language quoted earlier in this opinion. Briefly, § 4 provides that a local zoning ordinance may provide that the board of appeals (in this case the board of aldermen acting as the board of appeals) may grant special permits "in appropriate cases and subject to appropriate conditions and safeguards"; and § 15 provides that the board shall "hear and decide applications for special permits for exceptions as provided in section four upon which such board is required to pass." There is no language anywhere in the statute or in the Newton zoning ordinance which expressly authorized the board to impose condition No. 8. If the board has such power, it must have some other basis; and the board contends that such other basis exists.

We reject at the outset the board's seeming reliance on the Home Rule Amendment, art. 89 of the Amendments to the Massachusetts Constitution (Amendment). By § 8 of the Amendment the General Court reserved certain powers to itself, including "the power to act in relation to cities and towns, but only by general laws which apply alike to all cities, or to all towns, or to all cities and towns." Section 6 of the Amendment provides that "[a]ny city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws enacted by the general court in conformity with powers reserved to the general court by section eight . . . ."

If we assume that the General Court could confer on municipalities the power or function of imposing condition No. 8 on an applicant for a special permit, that power or function did not devolve on the city of Newton under the Amendment. This is so because the General Court, in the exercise of its reserved powers, had occupied the field of zoning by its enactment of The Zoning Enabling Act, G. L. c. 40A, which was then applicable to all cities and towns. This occupation of the field by the Legislature negates any implied power of the municipality in the same area. Fur-

371 Mass. 849                                                857

Middlesex & Boston St. Railway Co. *v.* Board of Aldermen of Newton.

thermore, if the city of Newton had such a power or function under the Amendment, such power or function could be exercised only "by the adoption, amendment, or repeal of local ordinances or by-laws," which contemplates the exercise of the municipal legislative power by the authorized constituency or body, in this case the board of aldermen. Condition No. 8 was not imposed by the act of the board of aldermen as the city's legislative body, but rather by an administrative board whose membership was the same as that of the board of aldermen. In short, the granting of the special permit and the imposition of condition No. 8 thereon was not the adoption of an ordinance or by-law.

The board's principal argument in justification of its imposition of condition No. 8 is founded on broad considerations of general public welfare. We summarize the argument in this paragraph. General Laws c. 40A authorizes cities and towns, in § 2 thereof, to adopt zoning regulations "[f]or the purpose of promoting the health, safety, convenience, morals or welfare of its inhabitants" (as amended through St. 1959, c. 607, § 1), and to do so by regulating and restricting "the density of population, and the location and use of buildings, structures and land for . . . residence or other purposes"; and in § 3 thereof, "to lessen congestion in the streets; to conserve health; . . . to prevent overcrowding of land; to avoid undue concentration of population; . . . to encourage the most appropriate use of land throughout the city . . .; and to preserve and increase its amenities" (inserted by St. 1954, c. 368, § 2). Massachusetts case law interprets G. L. c. 40A as an affirmative measure to alleviate housing shortages for low income and elderly persons. The statutory scheme which includes G. L. cc. 40A, 40B, and 121B, confirms the affirmative power of zoning to meet housing shortages for such persons. There is no constitutional obstacle to the accomplishment of the ends contemplated by the board in imposing condition No. 8, viz., the provision of adequate housing for low income and elderly persons.

The argument concludes that because the result the board sought to accomplish was the provision of housing for low income and elderly persons, and because there was no constitutional obstacle to the accomplishment of that result, it therefore had the power to require the plaintiff to make the special contribution thereto in the manner imposed by condition No. 8. We disagree with the board's conclusion, and we do so without questioning the premise that municipalities, acting through their duly authorized officers and in the manner permitted by law, may undertake the expenditure of public funds to provide housing for low income and elderly persons. We hold that the administrative board authorized to pass on applications for special permits under the zoning ordinance is without power to make the important policy decisions involved in committing a municipality to a program of public housing for low income or elderly persons, and that the board may not exact or compel a contribution to the cost of such a program from applicants for special permits. The board is without power to impose such a price on special permits which it is otherwise authorized to issue. The board's argument that the special permit enables the plaintiff to make a more profitable use of his property than would be possible without the permit gives rise to no power in the board to condition the permit on the payment of the price involved in its condition No. 8.

Our conclusion that the board had no power to impose condition No. 8 is based on our reading and application of the zoning enabling statute, G. L. c. 40A, and the Newton zoning ordinance. We therefore do not reach the question, briefed at length by the parties, whether condition No. 8 would be constitutionally permissible if it were (a) authorized by the General Court as part of The Zoning Enabling Act or otherwise and the power to impose it were delegated to the board by municipal ordinance, or (b) authorized by the operation of the Home Rule Amendment and by an ordinance enacted pursuant thereto. Neither do we reach the extended argument by the board in favor of a liberal, sometimes referred to as "non-

371 Mass. 849                                                              859

Middlesex & Boston St. Railway Co. *v.* Board of Aldermen of Newton.

Euclidean"[7] (see *Euclid* v. *Ambler Realty Co.*, 272 U.S. 365 [1926]), position on the constitutional scope of the zoning power, since in the present case there is no indication that the power has been exercised by any responsible legislative body in any manner which can be construed to have empowered the board to impose condition No. 8.

3. *Defense of Waiver or Estoppel.* The defendants contend that because the plaintiff completed the construction of the fifty-four dwelling units authorized by the special permit without waiting for a decision on the validity of conditions No. 7 and No. 8, he is now barred from obtaining relief because of either waiver or estoppel. We do not agree.

It is undisputed that the plaintiff has at all times asserted his intention of proceeding simultaneously with the construction and the legal proceedings to test the validity of the conditions. The special permit was granted on September 4, 1973, and the plaintiff entered his appeal therefrom in the Superior Court on October 9, 1973. The defendants filed their first answer thereto on September 25, 1974, and they filed several answers thereafter in response to amendments by the plaintiff. The defendants did not set up the defense of waiver or estoppel in any of those answers. The new rules of civil procedure which took effect on July 1, 1974, provided in Mass. R. Civ. P. 8 (c), 365 Mass. 750 (1974): "In pleading to a preceding pleading, a party shall set forth affirmatively ... estoppel, ... waiver, and any other matter constituting an avoidance or affirmative defense." The failure to comply with this rule is, without more, sufficient reason for holding that the defenses of waiver and estoppel are not now open to the defendants.

However, there is another equally sufficient reason for reaching the same result. That reason is found in the language of two instruments by which the board implicitly

---

[7] This characterization is at odds with what the United States Supreme Court has recently called "the generous *Euclid* test." *Arlington Heights* v. *Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 263 (1976).

acknowledged and sanctioned the plaintiff's action in going ahead with the construction while simultaneously contesting in court the validity of the conditions. On November 4, 1974, the board voted to waive an original requirement that no apartment or building be occupied until the entire construction was completed and to permit the plaintiff to lease an apartment in building A to the NHA. The vote included the following: "The lease shall terminate sixty (60) days after final court determination of the legality of Condition 8 . . . if the determination nullifies said condition. If the determination upholds Condition 8, the duration of occupancy under this condition shall be applied to the first five-year lease for one unit under Condition 8 . . . . Final court determination shall mean the judgment of the highest court to which any party shall appeal." On November 18, 1974, the board passed a similar order in identical language covering a lease of two apartments in building B to the NHA. It seems clear from these and other dealings between the parties as the construction of the buildings progressed that, although they still maintained their adversary positions with respect to the validity of conditions No. 7 and No. 8, they nevertheless cooperated reasonably toward an early completion and occupancy of the units in a manner which is not consistent with any waiver or estoppel of the plaintiff's right to prosecute his litigation to a final decision. The defendants appear to have desired a final judicial determination of the dispute as much as did the plaintiff.

4. *Damages.*    The plaintiff's original complaint included no allegations or prayers relating specifically to money damages. Such allegations and prayers were included in the plaintiff's "Substituted Supplemental Complaint" filed on November 6, 1974, but they seem to be directed to the defendants' alleged wrongful refusal to permit the occupancy of several buildings which the plaintiff alleged were completed in compliance with the requirements of the special permit. The plaintiff now argues that he is entitled to damages from the defendants computed at the difference between the fair market monthly rental of the five apart-

371 Mass. 849                    861

Middlesex & Boston St. Railway Co. *v.* Board of Aldermen of Newton.

ments leased to the NHA pursuant to condition No. 8 and the monthly rental by the NHA to the plaintiff under the leases. The trial judge recited the relative rentals payable by the NHA for the five apartments leased to it and those paid by other tenants in the same buildings for similar apartments, but he made no effort to determine or assess any damages since he concluded that condition No. 8 was not in excess of the board's authority.

Our holding that condition No. 8 is invalid does not mean that the plaintiff is entitled to recover damages from the defendants in this case. There is no finding that the building commissioner, if he is in fact a defendant (see note 2 *infra*), took any part in the board's imposition of condition No. 8 or that he in any way caused damage to the plaintiff. Although the members of the board imposed the invalid condition, there is no finding that they acted "in bad faith, maliciously or corruptly," and they are therefore immune from liability in damages to the plaintiff for their error under the rule discussed and applied in *Gildea* v. *Ellershaw,* 363 Mass. 800, 820 (1973). The fact that in referring to errors of this type we sometimes state that a board exceeded its authority does not alter the test to be applied in determining whether the members of the board are liable for damages resulting from their error. *Id.* at 823-825. There appears to be no basis for imposing liability either on the members of the board personally or on the city. See *Sherman* v. *Rent Control Bd. of Brookline,* 367 Mass. 1, 6-7 (1975).

Since the NHA is not a party to this proceeding, we do not consider the relative rights and liabilities between it and the plaintiff under the leases executed by them pursuant to condition No. 8 which we hold was invalid.

5. *Summary and Order.* The judgment entered in the Superior Court was "that the complaint be dismissed with costs of the action to the defendants." We order that the judgment be vacated and that a new judgment be entered in the Superior Court to the effect that (a) condition No. 8 contained in the board's order No. 147-73, dated September 4, 1973, is annulled as in excess of the board's author-

ity, (b) with the exception of condition No. 8, the decision of the board as contained in said order No. 147-73, dated September 4, 1973, was not in excess of the board's authority, and (c) the clerk of the court within thirty days after the entry of the judgment send an attested copy to the board. .

*So ordered.*