Giles, Linda E., J.
INTRODUCTION
These are consolidated actions involving the identical parties. In the first action, RSA Media, Inc. v. Sheila *657 Ciavattieri, Civil Action No. 2009-01358-B, RSA Media, Inc. (“RSA”) is suing Sheila Ciavattieri (“Ciavattieri”) for declaratory judgment (Count I), breach of a lease (Count II), and a violation of G.L.c. 93A, §11 (Count III);[1] and Ciavattieri is counterclaiming against RSA under G.L.c. 93A.[2] In the second action, Sheila Ciavattieri v. RSA Media, Inc., Civil Action No. 09-01766-B, Ciavattieri has brought a summary process action to evict RSA from the premises she owns on Bedford Street in Abington, Massachusetts.
After the parties filed a written waiver of jury trial, the matters came before the court on August 7 and 8, 2012, for a jury-waived trial. In addition to presenting the testimony of James A. Lack (“Lack”), Ciavattieri, Frederick Butts (“Butts”), Edward Jordan (“Jordan”), and Gregory Galvin (“Galvin”), the parties submitted a “Stipulation of Agreed Facts” and sixteen exhibits.
FINDINGS OF FACT
RSA is a Massachusetts corporation that is in the business of selling outdoor advertising. Lack is its owner and president. Ciavattieri owns the subject properly, 1550 Bedford Street (Route 18), Abington, Massachusetts (“Property”), as well as a larger, adjacent parcel north of the Property in Weymouth, Massachusetts (‘Weymouth Parcel”). Stephen Gosselin (“Gosselin”) owns the parcel (“Gosselin Parcel”) immediately south of the Properly.
The Property and the Weymouth Parcel were owned previously by the South Farm Abington Realty Trust (‘Trust”). Galvin was the trustee of the Trust, and Jordan was its sole beneficiary. Galvin also served as Jordan’s attorney.
Since the 1940s, a billboard advertising sign structure consisting of I-beams and only a northward-facing sign stood on the Property. That billboard structure was owned by either AK Media or Clear Channel. The owner of the original billboard removed the structure when it lost its lease.
In 2000, RSA as potential lessee and through its attorney, Kathleen Phelps, and the Trust, as potential lessor and through its trustee and attorney, Galvin, began negotiations to enter into a billboard lease (“Lease”) relative to the existing one-sided billboard structure and appurtenances located on the Property. Although the standard in the outdoor advertising industry is to build a two-sided billboard (because it would generate more revenue than a one-sided version), Lack expressed doubt to Jordan about the prospect of obtaining permission from the Town of Abington to erect a two-sided replacement billboard. In any event, the two attorneys negotiating the lease never discussed the possibility of any replacement billboard being two-sided. Indeed, Galvin would never have agreed to such a term, because the Trust did not control the Gosselin Parcel or any property to the south of the Property and, therefore, Paragraph 8 of the proposed Lease could expose the Trust to liability for any obstruction beyond its control to the south of the billboard:
Other Obstructions; Legal Restrictions. If the view of the Billboard is obstructed in any way or if the use of the Billboard (or any replacement sign structure erected by Lessee) is prevented or restricted by law or court order, the Lessee may at its option terminate this Lease and receive adjustment for all rent paid for the unexpired term, or may keep the Lease in force for the period of such obstruction or impairment at the rate of Five Dollars ($5.00) per year (in each case without prejudice to any other right or remedy of Lessee in case of any breach by Lessor).
(Such obstruction clauses are standard in all contracts in the industry.) Paragraph 4 of the Lease contemplates one or two sign “faces” (or panels) or a “tri-vision unit” but is silent as to whether those panels or unit can appear on both sides of the billboard.[3]
The Lease was signed on December 15, 2000, by Galvin, on behalf of the Trust, and Lack, on behalf of RSA. Soon thereafter, RSA and the Trust petitioned the Abington Zoning Board of Appeals (“ZBA”) for permission to “[r]epair/replace existing billboard with new structure of similar dimensions.” After a series of public hearings in 2001, the ZBA approved the replacement billboard on September 13, 2001.
On December 20, 2001, Ciavattieri took title to the Property and the Weymouth Parcel. She assumed the Trust’s interest and became successor lessor under the Lease. Through a series of extensions, the Lease now extends to December 31, 2013. When the Lease terminates, Ciavattieri will own the billboard structure.
In October 2002, RSA erected a two-sided billboard, i.e., one with the capacity to accommodate advertising signs that face both north and south. Neither Ciavattieri nor her boyfriend and business partner, Butts, complained to RSA or Lqck about the billboard now being two-sided. Indeed, after RSA petitioned the ZBA in August 2003 to confirm the legality of maintaining a two-parallel billboard structure on the Property, both Ciavattieri and Butts testified before the ZBA in favor of a two-sided billboard. The ZBA constructively granted RSA’s petition on January 12, 2004; and the grant became final in March 2004.
In April 2004, Ciavattieri sent a notice to RSA, asserting that RSA was in default under the Lease because it had not obtained permission to have a “two-faced [sic] billboard” on the Property but indicating that she would be amenable to negotiating a new lease to permit a two-sided billboard if the parties could agree on increased rental payments.[4] Pursuant to subsequent litigation between the parties arising out of this alleged default and an apparent settlement agreement,[5] Ciavattieri ultimately stipulated that RSA was not in default and that the Lease was in full force and effect.
In 2008, Gosselin, Ciavattieri’s abutter to the south, added two floors on top of the pre-existing, one-story building on the Gosselin Parcel. The parties stipulate and agree that Gosselin’s taller building obstructs the south- *658 facing side of the billboard within the meaning of the Lease terms. Thereafter, RSA, relying on Paragraph 8 of the Lease, reduced its rent payment to Ciavattieri, to five dollars a year. The parties stipulate and agree that RSA’s rent payments from 2008 through August 2012 would otherwise toteil $92,835.26.
RULINGS OF LAW
The parties agree that the enlarged building on the Gosselin Parcel now obstructs the south-facing side of the billboard within the terms of their Lease. In response to the obstruction, RSA has availed itself of its remedy under Paragraph 8 (“Other Obstructions: Legal Restrictions”) of the Lease by reducing its annual rent payment to only $5.00. Contrary to Ciavattieri’s assertion, however, Paragraph 8 is not ambiguous: it clearly provides for contract remedies if the billboard view is obstructed “in anyway.” Moreover, Lack, RSA’s president, testified credibly that such obstruction clauses were standard in the outdoor advertising industry. Contract language is ambiguous “only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.” Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). See Southern Union Co. v. Dept. of Public Utilities, 458 Mass. 812, 810 (2011). “An ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other.” Lumbermens Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 466 (1995).
Ciavattieri does contend persuasively that, when the Lease was executed, neither party contemplated the prospect of a two-sided replacement billboard and, therefore, that the parties committed a mutual mistake in not providing for such an eventuality. Indeed, Galvin testified credibly that he never would have agreed to Paragraph 8 if RSA had had a turo-sided billboard in mind, inasmuch as his client could not control activity on the south-facing property (the Gosselin Parcel). The equitable remedy of rescission is available to the parties if there is clear and convincing evidence of a mutual mistake upon an essential element of the agreement. Browning-Ferris Industries, Inc. v. Casella Waste Management of Massachusetts, Inc., 79 Mass.App.Ct. 300, 313 (2011). ‘The harm to the party seeking rescission must be fundamental to the contract so as to ‘take[ ] away its foundation.’ ” Id., quoting De Angelis v. Palladino, 318 Mass. 251, 257 (1945). Refief by rescission is appropriate in situations, like the instant one, “where a mistake of both parties has such a material effect on the agreed exchange of performance as to upset the very basis for the contract.” Restatement (Second) of Contracts §152 comment a, at 386 (1979).
Nevertheless, Ciavattieri failed to plead mutual mistake as an affirmative defense. A matter constituting an avoidance, such as rescission, must be pled affirmatively. See Mass.R.Civ.P. 8(c). “Affirmative defenses are waived when they are not raised in the first responsive pleading.” Aronovitz v. Fafard, 78 Mass.App.Ct. 1, 8 (2010). See Middlesex & Boston St. Railway Co. v. Board of Aldermen of Newton, 371 Mass. 849, 859 (1977).
Even if the defense of mutual mistake were available to Ciavattieri, however, she would not prevail, because she has waived her right to seek rescission, summary process, or other relief under the Lease arising from RSA’s replacement of the original one-sided billboard with a two-sided one. “Waiver is the intentional relinquishment of a known right.” Normandin v. Eastland Partners, Inc., 68 Mass.App.Ct. 377, 388 (2007), quoting Niagara Fire Ins. Co. v. Lowell Trucking Corp., 316 Mass. 652, 657 (1944). Waiver “can be inferred from a party’s conduct and the surrounding circumstances,” Dynamic Machine Works, Inc. v. Machine & Electrical Consultants, Inc., 444 Mass. 768, 774(2005), quoting Boston Helicopter Charter, Inc. v. Agusta Aviation Corp., B.L., 767 F.Sup. 363, 372 (D.Mass. 1991), such as where, as here, aparty seeks and accepts benefits under a lease, see M.J.G. Properties, Inc. v. Hurley, 27 Mass.App.Ct. 250, 253 (1989); Edward’s Fine Furniture, Inc. v. DiTullio, 356 Mass. 380, 382 (1969). Between October 2002, when the two-sided billboard was erected, and April 2004, when she sent notice to RSA of its alleged default under the Lease because of the change, Ciavattieri accepted benefits under the Lease by taking RSA’s rent without protest. In 2003, she supported RSA’s application to the ZBA to confirm the legality of the two-sided sign, presumably because she will be taking ownership of a more lucrative billboard at the expiration of the Lease on December 31, 2013. Furthermore, Caviattieri ratified the Lease when she conceded that it was valid and in full force and effect pursuant to the parties’ 2004 litigation. See Carey’s, Inc. v. Carey, 25 Mass.App.Ct. 290, 300 n.7 (1988). Thus, Ciaviattieri cannot be heard to complain of RSA’s alleged default in light of her own acquiescing words and actions surrounding the new, two-sided billboard.
Finally, having so found for RSA on Ciaviattieri’s action for summary judgment, the court is at a loss to determine the basis for RSA’s “Breach of Lease” claim (Count II). If the allegation of breach is predicated on Ciaviattieri’s attempt to evict RSA, the matter is moot. In any event, RSA presented no evidence of damages in regard to Ciaviattieri’s purported breach.
ORDER
For all the foregoing reasons, it is hereby ORDERED AND ADJUDGED that:
1. In the case of RSA Media, Inc. v. Sheila Ciavattieri, Civil Action No. 2009-01358-B:
a. judgment enterinfavor ofRSAMedia, Inc., in Count I (“Declaratory Judgment”) and it be DECLARED that Paragraph 8 of the Lease exists, is valid, and mandates the current rent of $5.00 a year;
b. judgment enter in favor of Sheila Ciavattieri in Count II (“Breach of Lease”);
2. In the case of Sheila Ciavattieri v. RSA Media, Inc., Civil Action No. 2009-01766-B, judgment enters in favor of RSA Media, Inc.

 the two actions having been consolidated previously, a fourth count for consolidation is hereby dismissed as moot.

 Both parties have agreed to dismiss their respective 93A claims.

 Throughout the eight years of litigation between the parties, they seem to have assumed—-wrongfully—that the word “face,” which means an advertising panel, is synonymous with the word “side.”

 These facts are gleaned from the March 7, 2008, Memorandum of Decision and Order of the court, Spurlock, J., in the parties’ previous action, RSA Media, Inc. v. Sheila Ciavattieri, Suffolk Superior Court Civil Action No. 04-3288-E, which memorandum was entered as an exhibit in the instant case.

 See id.